**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No.: 22-30682 |
| | § | |
| **BRAZOS SANDY CREEK ELECTRIC** | § | |
| **COOPERATIVE, INC.,** | § | Chapter 7 |
| | § | |
| Debtor. | § | |

**STIPULATION AND AGREED ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS AND (IV) MODIFYING THE AUTOMATIC STAY**

Janet S. Northrup, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Brazos Sandy Creek Electric Cooperative, Inc. ("BSCEC" or "Debtor"), Debtor in the above-styled Chapter 7 case (the "Case") and the Collateral Trustee (defined below) hereby stipulate and agree to the entry of this Order (this "Order"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rules (the "Local Rules") that, among other things:

(i)     authorizes the Trustee to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the Prepetition Secured Parties (as defined below) have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Order or otherwise;

(ii)    modifies the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Trustee and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Order;

(iii)   grants the Prepetition Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties Adequate Protection (as defined below), Adequate Protection Liens (as defined below) and Adequate Protection Superiority Claims (as defined below);

1

(iv)     waives certain rights of the Trustee to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code; and

(v)      provides for the immediate effectiveness of this Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

In accordance with Bankruptcy Rules 2002, 4001(b), and 4001(d) and 9014 and all applicable Local Rules, notice of the Order having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); and it appearing that entry of this Order is necessary to avoid immediate and irreparable harm to the Debtor and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, its estate and all parties in interest, and is essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[1]

A.       **Petition Date**. On March 18, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

B.       **Jurisdiction and Venue**. This Court has core jurisdiction over the Case, the Stipulation and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other predicates for the relief granted herein are sections 105, 361, 362, 363, 364, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.       **Notice**. Notice of the Stipulation and the relief granted in this Order was proper and has been provided by the Trustee to certain parties in interest, including: (a) the Office of the United

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

States Trustee for the Southern District of Texas (the "United States Trustee"); (b) counsel to the Prepetition Secured Parties; (c) counsel to the Debtor; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the Southern District of Texas; and (f) any party that is entitled to notice pursuant to the Local Rules. Under the circumstances, such notice of the Stipulation, and the relief granted in this Order complies with Bankruptcy Rules 4001(b), (c) and (d) and the Local Rules.

D.       **Trustee's Stipulations Regarding the Prepetition Indebtedness**.  Subject only to the rights of parties in interest that are specifically set forth in Paragraph 5 below, the Trustee, and on behalf of the Debtor and its estate, admits, stipulates, acknowledges and agrees as follows:[2]

(i)       Prepetition Secured Notes Indenture.      On November 4, 2009, the Debtor entered into that certain Collateral Indenture, Security and Assignment Agreement dated as of November 4, 2009 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Secured Notes Collateral Indenture") with Wells Fargo Bank, N.A., in its capacity as collateral trustee (including its assignee, Computershare Trust Company, N.A., the "Collateral Trustee"), and the holders of the 6.54% Series 2009A Senior Secured Notes due June 30, 2024 (the "Notes") issued by the Debtor (including successors and assigns, and each of their respective agents, members, managers, officers, directors, and employees, collectively, the "Prepetition Secured Noteholders" and together with the Collateral Trustee, the "Prepetition Secured Parties") in accordance with the Note Purchase Agreement, dated November 4, 2009 (the "Note Purchase Agreement", and together with the Prepetition Secured Notes Indenture and all other related finance and security documents, the "Prepetition Secured Notes Indenture Documents"). All obligations of the Debtor arising under the Note Purchase Agreement and Prepetition Secured Notes Collateral

---

[2] Paragraphs D and E hereof shall be referred to herein collectively as the "Trustee's Stipulations."

Indenture or the other Prepetition Secured Notes Indenture Documents shall collectively be referred to herein as the "Prepetition Secured Notes Indenture Obligations."

(ii)     Prepetition Liens and Prepetition Collateral.  Pursuant to the Prepetition Secured Notes Collateral Indenture, the Debtor granted to the Collateral Trustee, for the benefit of itself and the Noteholders, to secure the Prepetition Secured Notes Indenture Obligations, a continuing first-priority lien and security interest in and on the Debtor's right, title and interest in and to (i) its Ownership Interest (as defined in the Prepetition Secured Notes Collateral Indenture) in and to the Project (as defined in the Prepetition Secured Notes Collateral Indenture), including any income or profits pertaining thereto and any permits with respect thereto (to the extent such permits can be assigned without triggering a default or violation thereof), (ii) in the PPA (defined below), Participation Agreement (defined below) and its Ownership Interest in all Contracts (as defined in the Prepetition Secured Notes Collateral Indenture) and all amendments, supplements or modifications thereto, and (iii) substantially all of its property and assets (which, for the avoidance of doubt, includes Cash Collateral and all damages (including rejection damages) related to the PPA, and the proceeds thereof, whether now owned or existing or hereafter acquired or arising, regardless of where located. In addition, the Collateral Trustee holds as collateral trustee in trust for the ratable benefit of the Prepetition Secured Noteholders under the Prepetition Secured Notes Collateral Indenture all of the right, title and interest of the Collateral Trustee to and under the Deed of Trust, Disbursement Agreement, Intercreditor Agreement, Account Control Agreements (each as defined in the Prepetition Secured Notes Collateral Indenture) and all other agreements and instruments entered into by the Collateral Trustee from time to time for the benefit of any Prepetition Secured Noteholders. All liens granted under and pursuant to the Prepetition Secured Notes Collateral Indenture shall collectively be referred to herein as the "Prepetition Liens." All "Collateral" (under

4

and as defined in the Prepetition Secured Notes Collateral Indenture) shall collectively be referred to herein as the "Prepetition Collateral." As of the Petition Date, (I) the Prepetition Liens (a) are legal, valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Secured Parties (as applicable) for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to the Carve-Out (as defined below) and "Permitted Encumbrances" as defined in the Prepetition Secured Notes Collateral Indenture, and (II) (w) the Prepetition Secured Notes Indenture Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the applicable Prepetition Secured Notes Indenture Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Secured Notes Indenture Obligations exist and (y) no portion of the Prepetition Secured Notes Indenture Obligations or any payments made to any or all of the Prepetition Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)     Amounts Owed under Prepetition Secured Notes Indenture Documents.  As of the Petition Date, the Debtor owed the Prepetition Secured Parties, pursuant to the Prepetition Secured Notes Indenture Documents, without defense, counterclaim, reduction or offset of any kind, in respect of loans made and other financial accommodations made by the Prepetition Secured Parties with respect to the Note Purchase Agreement (i) an aggregate  principal amount of not less than $383,249,999.85, (ii) the Make-Whole Amount and Prepayment Premium (each as defined in the

Prepetition Secured Notes Indenture Documents) and (iii) all accrued and hereafter accruing and unpaid interest thereon in an amount not less than $5,430,652.50 together with any additional fees, premiums, expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Secured Notes Indenture Documents), and other amounts now or hereafter due under the Prepetition Secured Notes Indenture Documents.

(iv)        <u>Release of Claims</u>. Subject to entry of the Final Order and the reservation of rights set forth in Paragraph 5 below, the Trustee, the Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties and each of their respective affiliates, assigns or successors and the respective present and former members, managers, equity holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees and other representatives of the foregoing (all of the foregoing, collectively, in such capacity, the "<u>Prepetition Releasees</u>") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights and other rights of disgorgement or recovery against any and all of the Prepetition Releasees, whether arising at law or in equity, relating to and/or otherwise in connection (as applicable) with the Prepetition Secured Notes Indenture Obligations, the Prepetition Liens or the debtor–creditor relationship between any of the Prepetition Secured Parties on the one hand, and the Debtor, on the other hand, including (I) any recharacterization, subordination, avoidance, disallowance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Secured Notes Indenture Obligations or any payments or other

6

transfers made on account of the Prepetition Secured Notes Indenture Obligations, or the validity, enforceability, priority, avoidability or non-avoidability of the Prepetition Liens securing the Prepetition Secured Notes Indenture Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Releasees.

E.      **Cash Collateral**.  All of the Debtor's cash, including any cash in deposit accounts of the Debtor, the Collateral Trustee or the Trustee, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

F.      **Adequate Protection for Prepetition Secured Parties**. The Prepetition Secured Parties have agreed to permit the Trustee to use the Cash Collateral, during the Period (as defined below), subject to the terms and conditions set forth herein. The Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Trustee's use of the Prepetition Collateral and the imposition of the automatic stay but for which the Prepetition Secured Parties has indicated that it would seek immediately to foreclose upon its interests in the Prepetition Collateral.  Based on the record presented to the Court and the Stipulation, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Trustee's prudent exercise of business judgment consistent with her fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Secured Parties. The Prepetition Secured Parties have expressly consented to the entry of this Order and the relief provided herein.

G.      **Section 552**. In light of the subordination of their Prepetition Liens and superpriority administrative claims to the Carve-Out, each of the Prepetition Secured Parties is

7

entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

H. **Good Faith**. The parties herein have acted in good faith, at arm's length, and with sound business judgment in connection with this Order.

I. **Relief Essential; Best Interest**. For the reasons stated above, the Trustee has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and the Local Rules. Absent granting the relief set forth in this Order, the Debtor's estate, its business and properties and its ability to preserve the enterprise value of the Debtor's estate will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with this Order is therefor in the best interests of the Debtor's estate and consistent with the Trustee's fiduciary duties. Based upon all the foregoing, sufficient cause exists for immediate entry of the Order pursuant to Bankruptcy Rules 4001(b)(2) and the applicable Local Rules.

**NOW, THEREFORE**, based upon the Stipulation and the record before this Court with respect to the Stipulation, and with the consent of the Trustee and the Prepetition Secured Parties to the form and entry of this Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Stipulation Approved**. The Stipulation is hereby approved in accordance with the terms and conditions set forth in this Order. Any objections to the Stipulation with respect to the entry of this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. **Protections**.

   (a) **Authorization to Use Cash Collateral**. To enable the Trustee to continue to operate the Debtor's business and preserve and maximize the value of the estate, during the period

8

from the entry of this Order through and including the occurrence of a Termination Event and following the Notice Period (each as defined below), in each case unless extended by written agreement of the Collateral Trustee at the direction of the Prepetition Secured Noteholders , which may include agreement via email (the period from the entry of this Order through and including such earliest date, the "Period"), the Trustee is hereby authorized to use Cash Collateral.  Any use of Cash Collateral shall be consistent with the terms and conditions of this Order, including the Approved Budget and the Budget Covenants as defined and contained in Paragraph 2(c) below.

(b)      Budget.  In connection with the entry of this Order, the Trustee and the Prepetition Secured Parties have agreed on the initial operational disbursement budget through April 25, 2022 and chapter 7 administrative disbursements through May 4, 2022 (the "Initial Approved Budget"). The Trustee and the Prepetition Secured Parties intend to enter into good faith negotiations concerning the terms of the budget following April 25, 2022 and May 4, 2022, respectively, including duration, disbursements, covenant requirements, variances, excess cash flow sweeps and Trustee compensation (the "Initial Supplemental Budget"). Upon approval of the Initial Supplemental Budget by the Prepetition Secured Parties, which may include agreement by email, such budget shall be a "Supplemental Approved Budget" which shall supplement and replace the Initial Approved Budget (the Initial Approved Budget, as modified by any and all Supplemental Approved Budgets, shall constitute the "Approved Budget") without further notice, motion, or application to, order of, or hearing before, this Court. The Trustee and Prepetition Secured Parties may agree to further Approved Budgets without further notice, motion, or application to, order of, or hearing before, this Court.  Notwithstanding any line item in an Approved Budget, the Prepetition Secured Parties right to object to any Trustee Professional Fees or Trustee compensation is expressly preserved.

9

(c)      Budget Covenants.  The Trustee shall only expend Cash Collateral and proceeds thereof in accordance with the purposes, and in the time periods, set forth in the Approved Budget.  The budget-related covenants under this Paragraph 2(c) are collectively referred to herein as the "Budget Covenants."

(d)      Use of Proceeds of Collateral. The Trustee shall not be permitted to make any payments on account of any prepetition debt or obligation except with respect to the Prepetition Secured Notes Indenture Obligations as set forth in this Order or other order of the Court.  Until the Prepetition Secured Obligations are Paid In Full, all (i) proceeds from the sale or other disposition of the Prepetition Collateral or Adequate Protection Collateral (defined below) net of transaction costs, including operational costs, chapter 7 administrative costs and Trustee compensation each as set forth in the Approved Budget and (ii) recoveries related to the Brazos Claims and Objections (defined below) net of transaction costs, including operational costs, litigation costs, chapter 7 administrative costs and Trustee compensation, each as set forth in the Approved Budget, shall be paid to the Prepetition Secured Parties upon receipt except as otherwise provided in any Approved Budget.

3.      **Adequate Protection.**

(a)      In consideration for the use of the Cash Collateral, the Collateral Trustee, for the benefit of the Prepetition Secured Noteholders, shall receive the following adequate protection (collectively referred to as the "Prepetition Secured Parties Adequate Protection"):

(i)      Adequate Protection Liens. To the extent there is a diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, resulting from the use, sale, or lease by the Trustee of the applicable Prepetition Collateral (including Cash Collateral) and/or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code or as otherwise allowed under section 361 of the Bankruptcy Code or ordered by the Court ("Diminution in Prepetition Collateral Value"), the Collateral Trustee, for the benefit of the

10

Prepetition Secured Parties, is hereby granted, subject and subordinate to the Prepetition Liens, the Carve-Out, any prepetition lien that was valid, properly perfected, unavoidable and senior to the Prepetition Liens as of the Petition Date or properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code and the terms and conditions set forth below, pursuant to sections 361 and 363 of the Bankruptcy Code, additional and replacement liens upon all of the "<u>Adequate Protection Collateral</u>," excluding all of the Trustee's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, "<u>Avoidance Actions</u>"), but including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("<u>Avoidance Actions Proceeds</u>") (such adequate protection liens, the "<u>Prepetition Secured Party Adequate Protection Liens</u>"); <u>provided</u>, that, all proceeds of Adequate Protection Collateral shall be applied first towards Payment in Full of the Prepetition Secured Parties Obligations under the Prepetition Secured Notes Indenture Documents. "<u>Adequate Protection Collateral</u>" shall include, without limitation, any and all tangible and intangible pre- and post-petition property of the Debtor, whether existing before, on or after the Petition Date, together with  any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, goods, accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, payment intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real property, deposit accounts, securities accounts, investment property, letters of credit, letter-of-credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, commercial tort claims, capital stock of subsidiaries, wherever located, bankruptcy claims, intercompany claims, claims against the Debtor's officers and directors and the proceeds, products, rents, accession and profits of the foregoing.

(ii)  <u>Adequate Protection Superpriority Claims</u>. To the extent of Diminution in Prepetition Collateral Value, the Prepetition Secured Parties are hereby further granted, subject and subordinate to the Prepetition Liens, the Carve-Out and any prepetition lien that was valid, properly perfected, unavoidable and senior to the Prepetition Liens as of the Petition Date or properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, allowed superpriority administrative claims (such adequate protection superpriority claims, the "<u>Prepetition Secured Party Adequate</u>

Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code and payable from and having recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (including all Avoidance Actions Proceeds). Subject to the relative priorities set forth above, the Prepetition Secured Party Adequate Protection Superpriority Claims against the Debtor shall be allowed and enforceable against the Debtor and its estate on a joint and several basis. For purposes of this Order, the terms "Paid in Full," "Repaid in Full," "Repay in Full," and "Payment in Full" shall mean, the indefeasible  payment in full in cash of all Prepetition Secured Notes Indenture Obligations (other than contingent obligations, indemnities and expenses related thereto that, in each case, are not then payable or in existence or for which no claim has been asserted).

(iii)     Priority of Prepetition Secured Party Adequate Protection Liens and Prepetition Secured Party Adequate Protection Superpriority Claims. The Prepetition Secured Party Adequate Protection Liens, subject to and subordinate to the Prepetition Liens, the Carve-Out the Permitted Liens, and any prepetition lien that was valid,  properly perfected, unavoidable and senior to the Prepetition Liens as of the Petition Date or properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, and the Prepetition  Secured Party Adequate Protection Superpriority Claims, subject to and subordinate to the Prepetition Liens and the Carve-Out, (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or pari passu with, (x) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of the Debtor or any direct or indirect subsidiary thereof against any affiliate of the Debtor, (C) shall be valid, binding, perfected and enforceable against any other trustee or any  other estate representative appointed in the Case or upon the conversion of the Case to a case under chapter 11 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of the Case, and (D) shall be senior to any administrative claims arising in the Case.

(iv)     Interest, Professional Fees and Other Adequate Protection Payments. Without limiting any rights of the Collateral Trustee and  the Prepetition Secured Noteholders under section 506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Secured Parties to the entry of this Order and the Trustee's consensual use of Cash Collateral as provided herein, the Trustee shall, subject to the Carve-Out, (i) pay or reimburse in cash the Prepetition

Secured Parties for all fees, costs, expenses, and charges (including the reasonable and documented fees, costs, and expenses of counsel (including documentation and local counsel) and financial advisors for the Prepetition Secured Noteholders; (a) outstanding as of the Petition Date, to the extent, and at the times, payable under the Prepetition Secured Notes Indenture Documents, and (b) to the extent arising and relating to the period after the Petition Date, as provided in Paragraph 17(a) below and (ii) cause any and all interest on the Prepetition Secured Notes Indenture Obligations under the Prepetition Secured Notes Indenture Documents to accrue at the default rate set forth therein, which such interest shall be paid in the manner specified in each Approved Budget, in the case of each of sub-clauses (i) and (ii) above, whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 17(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court.

(v)     <u>Right to Seek Additional Adequate Protection</u>. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, this Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition Secured Parties. However, the Prepetition Secured  Parties may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Trustee to the request for or grant of any additional or alternative adequate protection.

4.      **Automatic Postpetition Lien Perfection**. This Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any Adequate Protection Collateral or (c) taking any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Collateral Trustee (at the direction of the Prepetition Secured Noteholders) may enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from

13

the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The Trustee shall execute and deliver to the Collateral Trustee all such financing statements, mortgages, notices, and other documents as the Collateral Trustee (at the direction of the Prepetition Secured Noteholders) may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, the Collateral Trustee (at the direction ofthe Prepetition Secured Noteholders) may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copyof this Order.

5.     **Reservation of Trustee's Rights and Bar of Challenges and Claims**.

The Trustee's Stipulations shall be binding upon the Trustee and Debtor and, subject to the remaining provisions of this Paragraph 5, the Debtor's estate in all circumstances upon entry of this Order. The Trustee shall have sixty (60) calendar days from the Petition Date (the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) to file a contested matter or adversary proceeding, challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Trustee's Stipulations, or (B) to file a contested matter or adversary proceeding against any or all of the Prepetition Secured Parties in connection with or related to the amount, validity, enforceability of

14

the Prepetition Secured Notes Indenture Obligations, or the validity, enforceability, perfection or priority of any of the Prepetition Liens, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Notes Indenture Obligations or the Prepetition Secured Notes Indenture Documents, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Secured Notes Indenture Obligations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 ofthe Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (clauses (A) and (B) collectively, the "<u>Challenges</u>" and, each individually, a "<u>Challenge</u>" and upon the entry of a final, non-appealable order in favor of the Trustee sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action, a "<u>Successful Challenge</u>").  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in the Case and any Successor Case (and after the dismissal of the Case or any Successor Case), (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance, (ii) any and all Challenges shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Notes Indenture Obligations shall be deemed to be fully allowed claims and (iv) the Trustee's Stipulations, including the release provisions therein, shall be binding on all parties in interest in the Case or any Successor Case, including any Committee or chapter 11 trustee in any Successor Case. Notwithstanding the foregoing, to the extent any Challenge is timely asserted by the Trustee, the Trustee's Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive

on the Trustee, the Debtor's estate and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that the Trustee's Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged by the Trustee and such Challenge becomes a Successful Challenge.  Except as may be ordered by this Court for cause shown, the Challenge Period may be extended only with the written consent of the Collateral Trustee (at the direction of Prepetition Secured Noteholders) in its sole discretion. Notwithstanding any provision to the contrary herein, nothing in this Order shall be construed to grant standing on any party in interest other than the Trustee to bring any Challenge on behalf of the Debtor's estate. The failure of any party in interest other than the Trustee to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtor's estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 5 or to require or permit an extension of the Challenge Period Termination Date. To the extent a motion seeking standing to assert a Challenge is filed prior to the expiration of the Challenge Period and the Challenge Period expires before such motion is ruled upon by this Court, the Challenge Period shall be extended to ten (10) days after the Court rules upon such standing motion.

6.      **Carve-Out**.  Subject to the terms and conditions contained in this Paragraph 6, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out in accordance with the terms of this Order:

(a)      Carve-Out. For purposes of this Order, "Carve-Out" means (i) all unpaid fees required to be paid in the Case to the clerk of this Court and to the office of the United States Trustee under 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717; (ii) to the extent allowed by this Court

under sections 327, 330 or 363 of the Bankruptcy Code, whether by order, procedural order or otherwise, all unpaid fees, costs, and disbursements (the "Trustee Professional Fees") of professionals retained by the Trustee in the Case (collectively, the "Trustee's Professionals") that are incurred before the Trigger Date (as defined below), that remain unpaid and that are within the dollar amount limits set forth in the Approved Budget; (iii) to the extent allowed by this Court under section 326, 330 or 363 of the Bankruptcy Code, whether by order, procedural order or otherwise, all unpaid compensation of the Trustee in the Case that is incurred before the Trigger Date (as defined below), that remain unpaid and that are within the dollar amount limits set forth in the Approved Budget and this Order; (iv) to the extent allowed by this Court under sections 327, 330 or 363 of the Bankruptcy Code, whether by order, procedural order or otherwise, all unpaid Trustee Professional Fees that are incurred after the Trigger Date in amount not to exceed $250,000 in the aggregate. The "Trigger Date" shall mean the first day after the occurrence of an Event of Default (defined below).

(b)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of the Trustee or any of the Trustee's Professionals incurred in connection with the case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Order shall be construed (i) to obligate any Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, the Trustee or any of the Trustee's Professionals, or to guarantee that the Debtor or its estate has sufficient funds to pay such compensation or reimbursement. Notwithstanding any provision in this Paragraph 6 to the contrary, no portion of the Carve-Out, Cash Collateral, or Prepetition Collateral shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 14 hereof. Nothing herein shall be construed as consent by the Prepetition Secured Parties to the allowance of any professional fees or

17

expenses in the Case or any Successor Case, or shall affect the right of any Prepetition Secured Party to object to the allowance and payment of any such fees and expenses.

(c)     Payment of Allowed Professional Fees and Expenses and Trustee Compensation.  The Trustee shall be permitted to pay Trustee Professional Fees and Trustee compensation, subject to this Order and the Approved Budget, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any compensation procedures order entered by this Court.

(d)     Waiver of 506(c) Claims.  As a further condition of the Trustee's use of Cash Collateral pursuant to this Order, (a) no costs or expenses of administration of the Case or any Successor Case shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Prepetition Collateral and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Collateral Trustee (at the direction of the Prepetition Secured Noteholders) and (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Prepetition Secured Parties.

7.     **Protection of Prepetition Secured Parties' Rights**.

(a)     Unless the Collateral Trustee (at the direction of Prepetition Secured Noteholders) shall have provided its prior written consent or all Prepetition Secured Notes Indenture Obligations have been Paid in Full, there shall not be entered in the Case or any Successor Case any order (including any order confirming any plan of reorganization or liquidation in a Successor Case) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or pari passu with the Prepetition Liens and the Adequate Protection Liens; (ii) the use of

18

Cash Collateral for any purpose other than to Pay in Full the Prepetition Secured Notes Indenture Obligations or as otherwise permitted in this Order or (iii) any modification of any of the Prepetition Secured Parties' rights under this Order or the Prepetition Secured Notes Indenture Documents with respect to any Prepetition Secured Notes Indenture Obligations.

(b)    The Trustee will, until the Prepetition Secured Notes Indenture Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the Chapter 7 Trustee Guidelines and in accordance with the Prepetition Secured Notes Indenture Documents unless otherwise agreed by the Prepetition Secured Parties and the Trustee, (ii) reasonably cooperate with, consult with, and provide to the Prepetition Secured Parties all such non-privileged information and documents that the Debtor is obligated (including upon the reasonable request by any of the Prepetition Secured Parties) to provide under the Prepetition Secured Notes Indenture Documents (in the absence of the pendency of the Case) or the provisions of this Order and (iii) permit the Collateral Trustee, the Prepetition Secured Noteholders and each of their respective consultants, advisors and other representatives to consult  with  the  Trustee and its advisors on matters concerning the Debtor's business, financial condition, operations and assets, including via weekly (or more frequently, as may be reasonably requested by the Prepetition Secured Noteholders) update calls between the Trustee, its advisors and consultants, the Collateral Trustee and the Prepetition Secured Noteholders, provided, however, that the failure to hold such weekly or more frequent update calls shall not constitute a breach of this Order unless the Prepetition Secured Noteholders request such call and the Trustee unreasonably refuses to hold such update call. Notwithstanding anything to the contrary contained herein, the Trustee does not waive any right to attorney-client, work product, or similar privilege, and neither the Trustee nor its legal and financial advisors shall be required to provide the Collateral Trustee or other Prepetition Secured Parties, or

*3095109*

their respective counsel and financial advisors, with any information subject to attorney-client privilege or consisting of attorney work product; _provided_ that the Trustee shall enter into a common interest agreement with the Prepetition Secured Parties for the purpose of sharing privileged and confidential information concerning the Debtor, its affiliates and the pursuit of claims against any person or entity.

(c)    Based on the findings set forth in this Order, if any or all of the provisions of this Order are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court, the validity of any liens, claims, or other protections granted to the Prepetition Secured Parties pursuant to this Order shall remain in full force and effect.

8.    **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of Paragraph 7 above, if at any time prior to the Payment in Full of all the Prepetition Secured Notes Indenture Obligations, the Trustee shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), that is senior in priority to the Prepetition Secured Notes Indenture Obligations, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the Collateral Trustee in accordance with the provisions of the Prepetition Secured Notes Indenture Documents for application to the Prepetition Secured Notes Indenture Obligations, unless otherwise agreed to in writing by the Prepetition Secured Parties.

9.    **Cash Collection**.  Subject to the Carve-Out, from and after the date of the entry of this Order, all collections and proceeds of any Prepetition Collateral and all Cash Collateral that shall at any time come into the possession, custody, or control of the Trustee, or to which the Trustee or the Debtor is now or shall become entitled at any time, shall be promptly deposited into the accounts maintained and controlled by the Trustee that are set forth on Exhibit A (as may be amended upon written agreement between the Trustee and Collateral Trustee, the "Trustee Accounts"), _provided,_

that the Prepetition Liens and Adequate Protection Liens in such Cash Collateral and proceeds and collection of Prepetition Collateral maintained in the Trustee Accounts shall be valid and perfected in favor of the Prepetition Secured Parties under this Order without the Prepetition Secured Parties taking any further action.  In addition, the Collateral Trustee is authorized to deposit all Cash Collateral in its possession into the Trustee Accounts and the Prepetition Liens and Adequate Protection Liens in such Cash Collateral shall remain valid and perfected under this Order without the Prepetition Secured Parties taking any further action.  The funds in the Trustee Accounts may only be used by the Trustee solely to the extent provided in this Order, the Approved Budget and the Prepetition Secured Notes Indenture Documents.  Until Payment in Full of the Prepetition Secured Notes Indenture Obligations, upon the direction of the Collateral Trustee as directed by the Prepetition Secured Noteholders, at any time after the occurrence of a Termination Event and expiration of the Notice Period (each as defined below) and subject to the provisions of Paragraphs 5, 6 and 12, all proceeds in the Trustee Accounts shall be remitted to the Collateral Trustee for application to the Prepetition Secured Notes Indenture Obligations in accordance with the provisions of the Prepetition Secured Notes Indenture Documents until Payment in Full of the Prepetition Secured Notes Indenture Obligations, and the Collateral Trustee shall be entitled to take all action that is necessary or appropriate to effectuate the foregoing. The Trustee is authorized to incur obligations and liabilities for treasury, depositary or cash management services, including overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any Trustee Account is maintained; provided, however, that except to the extent otherwise required by this Court, nothing herein shall require any Prepetition Secured Party to incur any overdrafts or provide any such services or functions to the Trustee.

21

3095109

10.     **Performance of Sandy Creek Obligations**.  The Trustee, in accordance with the Approved Budget, shall continue to perform the Debtor's obligations under (a) that certain Participation Agreement, dated as of August 29, 2007 (together with all schedules, appendices and other documents related thereto, and each as amended, supplemented or otherwise modified from time to time, the "Participation Agreement"); (b) that certain Project Management Agreement, dated as of August 29, 2007 (together with all schedules, appendices and other documents related thereto, and each as amended, supplemented or otherwise modified from time to time, the "Project Management Agreement" and, together with the Participation Agreement, the "Transaction Agreements"); (c) that certain Amended and Restated Plant Operation and Maintenance Agreement, dated as of November 30, 2021 (together with all schedules, appendices and other documents related thereto, and each as amended, supplemented or otherwise modified from time to time, the "Plant O&M Agreement"); (d) the various other agreements entered into from time to time in connection with the development, construction, operation or maintenance of all or any portion of the Energy Station, including but not limited to the Project Agreements as defined in the Participation Agreement (collectively, the "Project Agreements" and, together with the Transaction Agreements and the Plant O&M Agreement, the "Sandy Creek Agreements").

11.     **Termination Events**. Each of the following shall constitute an event of default and termination event under this Order unless waived in writing by the Collateral Trustee at the direction of the Prepetition Secured Lenders (each, an "Event of Default" and a "Termination Event"):

(a)     failure by the Trustee to comply with any Approved Budget;

(b)      the occurrence of a default, event of default or termination event under any Sandy Creek Agreement that is caused by the actions or omissions of the Trustee unless waived by the Prepetition Secured Parties;

(c)      the Prepetition Secured Parties shall cease to have a valid and perfected first-priority security interest in and lien on any Prepetition Collateral, junior only to the Carve- Out, any Permitted Liens, and any prepetition lien that was valid, properly perfected, unavoidable and senior to the Prepetition Liens as of the Petition Date or properly perfected after the Petition Date pursuant to section 546(b) of the Bankruptcy Code;

(d)      failure by the Trustee to comply in any material respect with this Order;

(e)      the entry by a court of competent jurisdiction of an order amending, modifying, staying, revoking or reversing this Order, without the express written consent of the Prepetition Secured Parties;

(f)      any sale or other disposition of all or a material portion of the Prepetition Collateral pursuant to section 363 of the Bankruptcy Code other than as permitted by this Order or otherwise agreed to in writing by the Prepetition Secured Parties;

(g)      the filing of a motion to convert the Case to a case under Chapter 11 of the Bankruptcy Code, or conversion of the Case to a case under Chapter 11 of the Bankruptcy Code;

(h)      the filing of a motion to dismiss the Case, or dismissal of the Case;

(i)      failure to meet any Milestone (as defined below) under this Order;

(j)      the failure of the Trustee and the Prepetition Secured Parties to agree on the litigation strategy related to the Brazos Claims and Objections;

(k)      the entry into any settlement or resolution with Brazos Electric related to the Brazos Claims and Objections that is not approved in advance and in writing by the Prepetition Secured Parties;

(l)      failure to pay any proceeds from the sale of the Prepetition Collateral or the Brazos Claims and Objections to the Prepetition Secured Parties net of transaction costs, including operational costs, litigation costs, chapter 7 administrative costs and Trustee compensation, each as set forth in the Approved Budget;

(m)      the assertion of a Challenge by the Trustee;

(n)      the failure of the Prepetition Secured Parties and the Trustee to reach an agreement on Trustee  compensation for the Case following May 4, 2002;

(o)      except as provided in this Order, the entry of an order granting relief from the automatic stay under section 362 of the Bankruptcy Code to the holder or holders of any security interest or lien on any part of the Prepetition Collateral; and

(p)      the grant of any super-priority claim that is pari passu with or senior to those of the Prepetition Secured Parties (except as provided in this Order).

12.      **Rights and Remedies Upon Termination Event**.

(a)      Upon the occurrence and during the continuance of a Termination Event and following the Collateral Trustee or Prepetition Secured Noteholders giving five (5) business days' notice to the Trustee and the United States Trustee (the "Notice Period"), any automatic stay otherwise applicable to the Prepetition Secured Parties shall be modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Prepetition Secured Parties to (i) exercise all rights and remedies under this Order, the Prepetition Secured Notes Indenture Documents (solely with respect to Prepetition Secured Notes Indenture Obligations) and/or

applicable nonbankruptcy law; and/or (ii) declare a termination, reduction or restriction on the ability of the Trustee to use any Cash Collateral (any such declaration hereunder shall be made to the respective lead counsel to the Trustee and the United States Trustee, and shall be referred to herein as a "Termination Declaration" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"); and / or (iii) direct any and all financial institutions where the Trustee Account is held (the "Financial Institutions") to transfer the Cash Collateral in the Trustee Account to one more financial institutions selected by the Prepetition Secured Parties subject to an appropriate holdback to fund the Carve-Out. The Prepetition Secured Parties shall not be required to obtain any further order of this Court to effectuate the foregoing and the Financial Institutions are hereby directed to comply herewith.

(b)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Order as necessary to (i) permit the Trustee to grant the Adequate Protection Liens and to incur all liabilities and obligations to the Prepetition Secured Parties under this Order, (ii) authorize the Collateral Trustee and the Prepetition Secured Noteholders to retain and apply payments made in accordance with this Order, (iii) permit each of the Collateral Trustee and the Prepetition Secured Noteholders, in their respective sole discretion, to perform any act authorized under this Order and the Prepetition Secured Notes Indenture Documents, including without limitation, the exercise of the Collateral Agent's rights set forth in Section 2.1 (Granting Clause III) and Section 2.2 of the Prepetition Secured Notes Collateral Indenture (the "Step-In Rights") including the direct participation of the Collateral Agent and Prepetition Secured Noteholders with the Trustee in any contested matter or adversary proceeding related to (x) the Power Purchase Agreement, dated September 1, 2008, with Brazos Electric Power Cooperative, Inc. ("Brazos Electric") (the "PPA") which Brazos Electric seeks to reject in its Emergency Motion for

an Order (I) Authorizing the Debtor to Reject Certain Power Purchase Agreements and (II) Granting Related Relief [Brazos Electric Dkt. No. 1622] (the "Rejection Claims"), (y) any claims of the Debtor and Trustee against any of the Debtor's affiliates, shareholders, officers or directors including all administrative expense claims (the "Affiliate Claims") and (z) any objections to any chapter 11 plan proposed by Brazos Electric or any of its affiliates (the "Confirmation Objections" and together with the Rejection Claims and Affiliate Claims, the "Brazos Claims and Objections"), and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Order. The Step-In Rights authorized hereunder shall, in addition to the contractual standing already afforded to the Collateral Trustee under that certain Consent Agreement, dated November 4, 2009 between Brazos Electric, the Debtor and the Collateral Trustee, afford the Collateral Trustee and the Prepetition Secured Noteholders with direct standing to appear and be heard as parties in interest in the chapter 11 cases of Brazos Electric and its affiliates.

(c)     Following the Termination Declaration Date, the Trustee shall have no further obligation to perform any of the Debtor's obligations under the Sandy Creek Agreements.

13.     **Coordination with Prepetition Secured Parties**.  The Trustee shall coordinate and consult with the Prepetition Secured Parties with respect to the prosecution of the Brazos Claims and Objections and the litigation strategy related thereto.

14.     **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no loans and/or proceeds from the Cash Collateral, Prepetition Collateral, or any portion of the Carve-Out may be used by the Trustee or any other person, party, or entity (including any of the Trustee's Professionals) to investigate or prosecute any Challenge (including any litigation or other action) (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) the Trustee or any other person, party, or entity (including any of the Trustee's Professionals) to (or

26

*3095109*

to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code unless upon consummation of any such loan all Prepetition Secured Notes Indenture Obligations are to be Paid in Full in Cash, or to seek any modification to this Order not approved by the Collateral Trustee (at the direction of the Prepetition Secured Noteholders); (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, any or all of the Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective present and former officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof) in connectionwith the Prepetition Secured Notes Indenture Obligations, the Prepetition Liens or the debtor–creditor relationship between any of the Prepetition Secured Parties on the one hand, and the Debtor, on the other hand, including (A) any Challenges and any Avoidance Actions or other actions arisingunder chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the Prepetition Secured Notes Indenture Obligations, or the validity, extent, and priority of the Prepetition Liens or the AdequateProtection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Liens, the Prepetition Secured Parties Adequate Protection Liens, or the other Prepetition Secured Parties Adequate Protection; and/or (D) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all ofthe Prepetition Secured Parties hereunder or any payments made hereunder; provided, however, that up to $30,000

27

of Cash Collateral may be used by the Trustee to investigate (but not to prosecute) the claims and/or liens of the Collateral Trustee and the other Prepetition Secured Parties under the Prepetition Secured Notes Indenture Documents so long as such investigation occurs within the Challenge Period; or (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) in support of such person's proposed purchase of any interest in the Debtor without the prior written consent of the Prepetition Secured Parties**.**

15.     **Preservation of Rights Granted Under this Order**.

(a)     Dismissal.  If any order dismissing the Case is at any time entered, then notwithstanding any such dismissal, (i) all rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties under this Order shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the provisions of this Order (and shall maintain their respective priorities as provided by this Order) until all Prepetition Secured Indenture Obligations have been Paid in Full, and (ii) to the fullest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties.

(b)     Survival of Order.  The provisions of this Order, any actions taken pursuant hereto, and the Prepetition Secured Parties Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties under this Order shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Successor Case, converting the Case to a case under chapter 11, dismissing the Case, withdrawing of the reference of the Case or any Successor Case or providing for abstention from handling or retaining of jurisdiction of the Case or any Successor Case in this

Court or by any other act or omission, unless agreed in writing by the Prepetition Secured Parties. The terms and provisions of this Order, including the Prepetition Secured Parties Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the Prepetition Secured Parties shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such Prepetition Secured Parties Adequate Protection, and such other rights, remedies, lien priorities, privileges, protections and benefits, shall continue in full force and effect in these proceedings and in any Successor Case and after dismissal thereof, and shall maintain their respective priorities as provided by this Order.

16.     **Insurance Policies**.  Upon entry of this Order, the Trustee shall take commercially reasonable efforts to name the Collateral Trustee (for the benefit of the Prepetition Secured Noteholders) as an additional insured and loss payee, as applicable, on each insurance policy maintained by the Trustee that in any way relates to the Adequate Protection Collateral, and take all such actions as are reasonably requested by the Collateral Trustee (at the direction of the PrepetitionSecured Noteholder) to evidence or effectuate the foregoing.

17.     **Other Rights and Obligations**.

(a)     Expenses.  To the extent the Trustee has a cash reserve in an amount to be agreed between the Trustee and the Prepetition Secured Parties in the in the Approved Budget (the "Cash Reserve"), the Trustee, in accordance with the Prepetition Secured Indenture Documents, shall pay all reasonable and documented expenses incurred by the Prepetition Secured Parties (including the reasonable and documented fees and expenses of all counsel for the Prepetition Secured Parties, in each case, and any internal or third-party appraisers, consultants, advisors and auditors engaged by or for the benefit of the Prepetition Secured Parties and/or their respective counsel, including Greenberg Traurig LLP, Evercore and Thompson Hine LLP, related to the Debtor, the Case, the

chapter 11 cases of Brazos Electric and its affiliates, the Prepetition Secured Indenture Documents and this Order including all actions authorized hereunder (the "Prepetition Secured Parties Expenses"). If the Trustee does not have sufficient cash on hand in excess of the Cash Reserve to pay Prepetition Secured Parties Expenses, the Trustee shall pay such expenses within five business days after obtaining cash on hand to fund the Cash Reserve and pay such expenses.

(b)     Notice of Collateral Trustee Professional Fees. The Collateral Trustee and professionals for the Prepetition Secured Parties (including professionals engaged by counsel to the Collateral Trustee and the Prepetition Secured Noteholders (collectively, the "Lender Professionals") shall not be required to comply with the United States Trustee fee guidelines or submit invoices to this Court, United States Trustee or any other party in interest. Copies of summary invoices submitted to the Trustee by such Lender Professionals shall be forwarded by the Trustee to the United States Trustee and such other parties as this Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Trustee or United States Trustee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) days of receipt of such invoices, then the Trustee or United States Trustee, as the case may be, shall file with this Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses, and any failure by any such party to file a Fee Objection within such ten (10) day period (the "Fee

Objection Period") shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. Within five (5) days after the expiration of the Fee Objection Period, the Trustee shall pay in accordance with the terms and conditions of this Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed. All such unpaid fees, costs, expenses, and charges of the Prepetition Secured Parties that have not been disallowed by this Court on the basis of an objection filed by the Trustee or the United States Trustee in accordance with the terms hereof shall constitute Prepetition Secured Indenture Obligations and shall be secured by the Adequate Protection Collateral as specified in this Order.

(c) <u>Binding Effect</u>. Subject only to Paragraph 5 above, the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Case and any Successor Case, including the Prepetition Secured Parties, the Trustee, the Debtor and its estate, successors and assigns, whether in the Case, in any Successor Case, or upon dismissal of the Case or Successor Case.

(d) <u>No Waiver</u>. The failure of any Prepetition Secured Party to seek relief or otherwise exercise its rights and remedies under this Order, the Prepetition Secured Notes Indenture Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise. Nothing contained in this Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights,

31

claims, or defenses available in law or equity to any Prepetition Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement to assert rights of setoff or other rights with respect thereto as permitted by law. Except as prohibited by this Order, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of any Prepetition Secured Party under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Case or any Successor Case to a case under chapter 11, dismissal of the Case or any Successor Case, or the appointment of a trustee or examiner in any Successor Case, or to oppose the use of Cash Collateral in any Successor Case, (ii) request additional restrictions upon the Trustee's business activities or use of funds, (iii) request termination or modification of this Order or (iv) exercise any of the rights, claims, or privileges (whether legal, equitable,or otherwise) of any Prepetition Secured Party under the Prepetition Secured Notes Indenture Documents, the Bankruptcy Code or otherwise.

(e)    <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary. In determining to permit the use of Cash Collateral, the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor and (ii) be precluded or estopped from asserting, any challenge to any factual representation set forth herein or from asserting any legal or equitable claim, theory, or defense against the Trustee, Debtor or its estate.

18.    **Milestones**.  The Trustee shall adhere to the following milestones which may be extended by the Prepetition Secured Parties in their sole discretion (the "<u>Milestones</u>"):

(a)      By no later than April 15, 2022, the Trustee shall move to retain advisors to assist the Trustee in the exercise of her duties on terms and conditions acceptable to the Prepetition Secured Parties;

(b)      The Trustee and the Prepetition Secured Parties shall have agreed on the Initial Supplemental Budget no later than April 25, 2022;

(c)      The Trustee, in consultation with the Prepetition Secured Parties, shall have established the requisite entities and obtained the requisite regulatory approvals to sell power from the Sandy Creek Energy Station no later than May 4, 2022;

(d)      The Trustee and the Prepetition Secured Parties have agreed on the process and timeline for the disposition and/or monetization of the Prepetition Collateral no later than May 4, 2022; and

(e)      The consent to the use of Cash Collateral shall expire on May 31, 2022 subject to extension provided in any Approved Budget (the "Outside Date") .

19.      **Section 552(b) Waiver.**  The  Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, rents, or profits of, or any of the items enumerated in section 552(b)(2) of the Bankruptcy Code with respect to any of the Prepetition Collateral in any motion, case, or action brought by the Trustee.

20.      **Right to Credit Bid**. The Prepetition Secured Parties shall have the unqualified right to credit bid up to the full amount of the Prepetition Secured Indenture  Obligations plus any accrued but unpaid interest on such obligations plus the Adequate Protection Obligations (to the extent such obligation, as determined by this Court, is for the payment of money) in connection with any sale,

33

auction, or other disposition of some or all of the Prepetition Collateral and Adequate Protection Collateral subject and pursuant to section 363(k) of the Bankruptcy Code.  As among the Prepetition Secured Parties, the method, manner, amount and other details with respect to any such credit bid will be governed by the Prepetition Secured Notes Indenture Documents or as otherwise agreed among the Prepetition Secured Parties.

21.    **Section 507(b) Reservation**. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any diminution in value of the Prepetition Collateral during the Case.  Nothing contained herein shall be deemed a finding by this Court, or an acknowledgement by the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any diminution of value.

Dated: _____

_____
DAVID R. JONES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

*3095109*

**STIPULATED AND AGREED:**

| | |
|---|---|
| **HUGHESWATTERSASKANASE, LLP**<br><br>By: */s/ Heather Heath McIntyre*<br>Wayne Kitchens (TBN 11541110)<br>Heather McIntyre (TBN 24041076)<br>Total Plaza<br>1201 Louisiana, 28th Floor<br>Houston, Texas 77002<br>Telephone:  (713) 759-0818<br>Facsimile:  (713) 759-6834<br>Email: wkitchens@hwa.com<br>Email: hmcintyre@hwa.com | **GREENBERG TRAURIG, LLP**<br><br>By: */s/ Shari L. Heyen*<br>Shari L. Heyen (SBN 09564750)<br>1000 Louisiana Street, Suite 1700<br>Houston, TX 770002<br>Telephone:     (713) 374-3500<br>Facsimile:     (713) 374-3505<br>Email: heyens@gtlaw.com<br><br>Nathan A. Haynes (admitted *pro hac vice*)<br>MetLife Building<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400<br>Email: pinkaso@gtlaw.com<br>Email: haynesn@gtlaw.com |
| **ATTORNEYS FOR CHAPTER 7 TRUSTEE, JANET S. NORTHRUP** | **COUNSEL FOR COLLATERAL TRUSTEE** |

*3095109*

**EXHIBIT A**

**Deposit Accounts**

Veritex Community Bank – Account number x-223068201