IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | Case No. 21-30725 (DRJ) | |
| BRAZOS ELECTRIC POWER § | | |
| COOPERATIVE, INC., § | Chapter 11 | |
| § | | |
| Debtor.[1] § | | |
| In re: § | | |
| § | Case No. 22-30682 (DRJ) | |
| BRAZOS SANDY CREEK ELECTRIC § | | |
| COOPERATIVE, INC., § | Chapter 7 | |
| § | | |
| Debtor. § | | |

**JOINT EMERGENCY MOTION FOR AUTHORIZATION AND
APPROVAL OF SETTLEMENT BETWEEN (I) BRAZOS ELECTRIC
AND (II) CHAPTER 7 TRUSTEE AND COLLATERAL TRUSTEE**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 5:00 PM (PREVAILING CENTRAL TIME) ON SEPTEMBER 6, 2022.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Janet S. Northrup, not individually, but as the chapter 7 trustee (the "Chapter 7 Trustee") for the bankruptcy estate (the "BSCEC Estate") of Brazos Sandy Creek Electric Cooperative, Inc. (the "BSCEC") in the above-captioned chapter 7 case (the "Chapter 7 Case"), and the debtor

---

[1] The debtor in the Chapter 11 Case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding the Chapter 11 Case may be obtained on the website of Brazos Electric's claims and noticing agent at http://cases.stretto.com/Brazos. Brazos Electric's address is 7616 Bagby Avenue, Waco, TX 76712.

4867-7011-8702

Brazos Electric Power Cooperative, Inc. ("Brazos Electric"[2] and collectively with the Chapter 7 Trustee, the "Movants") in the above-captioned chapter 11 case (the "Chapter 11 Case" and collectively with the Chapter 7 Case, the "Cases"), pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019, hereby move (this "Joint Motion") the Court for the entry in each of the Cases of an order, in form and substance as attached hereto as **Exhibit A** (the "Proposed Order"), authorizing and approving the settlement (the "Settlement") set forth in the agreement (the "Agreement") attached to the Proposed Order as **Exhibit 1** by and between (i) Brazos Electric, on the one hand, and, on the other, (ii)(a) the Chapter 7 Trustee and (b) Computershare Trust Company, N.A., the collateral trustee for the Secured Parties (as defined in the Collateral Indenture, Security and Assignment Agreement by and between BSCEC and the Collateral Trustee concerning the Notes (as defined below) dated November 4, 2009) (the "Collateral Trustee" and together with the Movants, the "Parties" and each a "Party") with respect to the 6.54% Series 2009A Senior Secured Notes due June 30, 2024 issued by BSCEC (the "Notes"). In support of this Joint Motion, the Movants respectfully state as follows:

## JURISDICTION, VENUE AND AUTHORITY

1. The Court has jurisdiction over this Joint Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Movants confirm their consent to the Court's entry of final orders or judgments on the Joint Motion if it is later determined that, in the absence of the consent of the Movants, the Court does not have constitutional authority to enter final orders or judgments hereon.

---

[2] In support of the Joint Motion, Brazos Electric submits *Brazos Electric's Declaration of Clifton Karnei in Support of Joint Motion for Authorization and Approval of Settlement Between (I) Brazos Electric and (II) the Chapter 7 Trustee and Collateral Trustee* filed contemporaneously herewith.

4867-7011-8702

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are section 105 of the title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## FACTUAL BACKGROUND

A. **The Cases and the Claim Objections**

4. On March 1, 2021 (the "<u>Chapter 11 Petition Date</u>"), Brazos Electric filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the Chapter 11 Case. Brazos Electric has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On March 15, 2021, the Office of the United States Trustee for the Southern District of Texas (the "<u>U.S. Trustee</u>") formed an Official Committee of Unsecured Creditors (the "<u>Committee</u>") in this chapter 11 case. *See* Chapter 11 Case, Dkt. No. 216. The Committee was reconstituted by the U.S. Trustee on March 24, 2021. *See* Chapter 11 Case, Dkt. No. 285. No trustee or examiner has been appointed in the Chapter 11 Case.

6. On March 16, 2022, Brazos Electric filed its *Emergency Motion for an Order (I) Authorizing the Debtor to Reject Certain Power Purchase Agreements and (II) Granting Related Relief* [Chapter 11 Case, Dkt. No. 1622] (the "<u>Rejection Motion</u>"). The Rejection Motion sought, among other things, approval of Brazos Electric's proposed rejection of the BSCEC PPA and the SCEA PPA (as defined in the Rejection Motion) *nunc pro tunc* to the date of the Rejection Motion. *See* Rejection Mot. ¶ 1.

7. On March 18, 2022 (the "<u>Chapter 7 Petition Date</u>"), BSCEC filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating the Chapter 7 Case.

3

Thereafter, the Chapter 7 Trustee was duly appointed as the chapter 7 trustee of the BSCEC Estate in the Chapter 7 Case. On April 25, 2022, the Meeting of Creditors was held in the Chapter 7 Case and continued to May 5, 2022, on which date the Meeting of Creditors was concluded.

8. On March 28, 2022, the Court entered an Order [Chapter 7 Case, Dkt. No. 35] (the "Operations Order"), without objection, authorizing the Trustee to operate temporarily BSCEC's business retroactive to the Petition Date to preserve the value of the BSCEC Estate.

9. On April 14, 2022, the Court entered the *Amended Stipulation and Agreed Order Regarding Rejection of Certain Power Purchase Agreement* [Chapter 11 Case, Dkt. No. 1692], which provided for, among other things, the rejection of the BSCEC PPA, but reserved certain rights, including, without limitation, as to the effective date of rejection.

10. On June 12, 2022, the Chapter 7 Trustee filed the *Motion to: (I) Approve Bidding Procedures; (II) Approve Assumption and Assignment Procedures; (III) Approve Stalking Horse Procedures and Bid Protections; (IV) Schedule Auction and Sale Hearing; (V) Authorize the Trustee to Conduct the Sale and Assume and Assign Executory Contracts; (VI) Approve the Form and Manner of Notice Thereof; and (VII) For Related Relief* [Chapter 7 Case, Dkt. No. 129] (the "Sale Process Motion") to establish procedures for the sale of the BSCEC Estate's interest in the Sandy Creek Energy Station.

11. On July 12, 2022, the Court held a hearing and approved the bidding and sale process (the "Sale Process") proposed in the Sale Process Motion, and on July 16, 2022, the Court entered the related *Order (I) Approving Bidding Procedures; (II) Approving Assumption and Assignment Procedures; (III) Approving Stalking Horse Procedures and Bid Protections; (IV) Scheduling Auction and Sale Hearing; (V) Authorizing the Trustee to Conduct the Sale and Assume and Assign Executory Contracts; (VI) Approving the Form and Manner of Notice Thereof; and*

4

*(VII) Granting Related Relief* [Docket No. 184] (the "Sale Process Order"). In accordance with the Sale Process Order, the Chapter 7 Trustee and her advisors have been marketing the TIC Interest (as defined in the Sale Process Order) and have given all required notices of the Sale Process in accordance with the provisions of the Sale Process Order.

12. On April 14, 2022, the Chapter 7 Trustee filed Claim No. 761 ("Claim No. 761") asserting, among other things, a general unsecured claim in the amount of $11,497,185.45 based on amounts due by Brazos Electric to BSCEC as of the Chapter 7 Petition Date. On May 23, 2022, the Chapter 7 Trustee filed Claim No. 773 ("Claim No. 773," and together with Claim No. 761, the "Trustee's Claims"), asserting a general unsecured claim for rejection damages in the amount of at least $438,296,721.00, as is further discussed in the *Attachment to Proof of Claim by the Chapter 7 Trustee for Brazos Sandy Creek Electric Cooperative, Inc.* attached to Claim No. 773.

13. On April 8, 2022, the Collateral Trustee, on behalf of the holders of (or managers or investment managers to certain holders of) the Notes and each of their respective agents, members, managers, officers, directors, and employees (the "Noteholders"), filed Claim No. 758 against Brazos Electric in the Chapter 11 Case ("Claim No. 758"). On May 23, 2022, the Collateral Trustee filed Claim No. 772 against Brazos Electric in the Chapter 11 Case ("Claim No. 772," and together with Claim No. 758, the "Collateral Trustee's Claims," and together with the Trustee's Claims, the "Claims") asserting a rejection damages claim of at least $434,967,371.

14. On June 25, 2022, Brazos Electric filed the *Debtor's Objection to Proof of Claim Nos. 761 and 773 Filed by Janet Northrup, Solely in Her Capacity as Chapter 7 Trustee for Brazos Sandy Creek Electric Cooperative, Inc.* [Chapter 11 Case, Dkt. No. 1917] (the "Chapter 7 Trustee Objection"). On June 26, 2022, Brazos Electric filed the *Debtor's Objection to Proof of Claim Nos. 758 and 772 Filed by Computershare Trust Company, N.A.* [Chapter 11 Case, Dkt. No. 1920]

4867-7011-8702

(the "Collateral Trustee Objection," and together with the Chapter 7 Trustee Objection, the "Claims Objections"), initiating a contested matter (the "Contested Matter") to determine the allowance of the Claims filed by the Trustee and the Collateral Trustee.

15. On July 11, 2022, the Bankruptcy Court entered the *Amended Agreed Scheduling Order Regarding Debtor's Objections to Brazos Sandy Creek Electric Cooperative, Inc.'s Proofs of Claim Nos. 761 and 773 [Docket No. 1917] and Computershare Trust Company, N.A.'s Proofs of Claim Nos. 758 and 772 [Docket No. 1920]* [Chapter 11 Case, Dkt. No. 1989] (the "Scheduling Order"), which provided for an expedited schedule for the Contested Matter, including, among other things, pre-discovery summary judgment motions on certain agreed threshold legal issues. On July 15, 2022, in accordance with the Scheduling Order, the Parties filed the *Notice of Joint Statement of Issues for Summary Judgment* [Chapter 11 Case, Dkt. No. 2037].

16. On July 27, 2022, in accordance with the Scheduling Order, Brazos Electric filed the *Debtor's Motion for Partial Summary Judgment Regarding the BSCEC Trustee and Computershare Claims* [Chapter 11 Case, Dkt. No. 2062], the Chapter 7 Trustee filed the *Chapter 7 Trustee's Motion for Summary Judgment* [Chapter 11 Case, Dkt. No. 2063] and the *Memorandum of Law in Support of Chapter 7 Trustee's Motion for Summary Judgment* [Chapter 11 Case, Dkt. No. 2064], and the Collateral Trustee filed the *Joinder of Computershare Trust Company, N.A. to Chapter 7 Trustee's Motion for Summary Judgment and Memorandum in Support* [Chapter 11 Case, Dkt. No. 2067] (collectively, the "Summary Judgment Motions").

17. On August 10, 2022, in accordance with the Scheduling Order, Brazos Electric filed the *Debtor's Response to Chapter 7 Trustee's Motion for Summary Judgment* [Chapter 11 Case, Dkt. No. 2104], the Chapter 7 Trustee filed the *Chapter 7 Trustee's Response to Debtor's Motion for Partial Summary Judgment Regarding the BSCEC Trustee and Computershare Claims*

4867-7011-8702

[Chapter 11 Case, Dkt. No. 2102], the Collateral Trustee filed the *Joinder of Computershare Trust Company, N.A. to Chapter 7 Trustee's Response to Debtor's Motion for Partial Summary Judgment Regarding the BSCEC Trustee and Computershare Claims* [Chapter 11 Case, Dkt. No. 2103] (collectively, the "Summary Judgment Responses").[3]

18. The respective positions of the Parties regarding the underlying merits of the Claims Objections, including, without limitation, the relative strength of such positions, are set forth in the Summary Judgment Motions and Summary Judgment Responses. As is also set forth therein, the full amounts of the Claims of the Chapter 7 Trustee and the Collateral Trustee are at issue in the Contested Matter.

19. After the filing of the Claim Objections, the Parties agreed to mediate (the "Mediation") their disputes concerning the Claims Objections before Judge Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas. During the Mediation, the Parties engaged in good faith discussions related to a potential resolution of the Claims and the Claims Objections.

20. As a result of the Mediation, the Parties have agreed to resolve the Claims Objections and resolve the allowance of the Claims pursuant to a "mediator's proposal," the terms of which form the basis of the Settlement, as set forth in the Agreement.

**B.  The Proposed Settlement**

21. The Agreement provides the following material terms:[4]

    a.  The BSCEC Estate and the Collateral Trustee shall have an allowed general unsecured claim (the "BSCEC Allowed Claim") in the amount of one-hundred sixty-five million dollars ($165,000,000) (the "Claim Amount")

---

[3]  The Summary Judgment Motions and Summary Judgment Responses are incorporated herein by reference.

[4]  This summary is illustrative and subject to, and superseded by, the terms and conditions of the Proposed Order and the Agreement. All internal references in this summary are the internal references utilized in the Agreement.

7

      against Brazos Electric in the Chapter 11 Case. The BSCEC Allowed Claim is not subject to setoff, recoupment, withholding, avoidance, recharacterization, subordination, or any other defense, claim, or cause of action by any party in interest in the Chapter 11 Case.

b.     Any chapter 11 plan filed in the Chapter 11 Case (any "<u>Chapter 11 Plan</u>") shall provide the following:

    (1)     Subject to Sections 3(c)–(d) and 4 below, the BSCEC Allowed Claim and the Chapter 7 Trustee and the Collateral Trustee (collectively, including any successor or assignee, the "<u>Holder</u>"), shall receive the same treatment as all other allowed general unsecured claims and all holders of any such allowed general unsecured claims (collectively, the "<u>GUCs</u>") under any Chapter 11 Plan; *provided, however*, that, at a minimum, the Holder shall receive, on account of the BSCEC Allowed Claim, indefeasible cash distributions equal in the aggregate to not less than eighty-seven percent (87%) of the Claim Amount, *i.e.*, one-hundred forty-three million five-hundred fifty thousand dollars ($143,550,000) (the "<u>Minimum Distribution Amount</u>"), payable in cash as follows: (x) approximately sixty percent (60%) of the Minimum Distribution Amount, *i.e.*, approximately eighty-six million one-hundred thirty thousand dollars ($86,130,000), on the effective date (the "<u>Effective Date</u>") of a confirmed Chapter 11 Plan (such distribution, as modified by Section 3(c) below, the "<u>Effective Date Distribution</u>"); and (y) the remaining approximately forty percent (40%) of the Minimum Distribution Amount, *i.e.*, approximately fifty-seven million four-hundred twenty thousand dollars ($57,420,000) as promptly as is practicable after the Effective Date, including partial distributions when available (such distribution(s), as modified by Section 3(c) below, the "<u>Post-Effective Date Distribution(s)</u>" and together with the Effective Date Distribution, the "<u>Distributions</u>"). Except as otherwise set forth in Section 24 of this Agreement or as otherwise agreed by the Chapter 7 Trustee and the Collateral Trustee (notice of which shall be provided to Brazos Electric), the Distributions shall be made to the BSCEC Estate.

    (2)     Brazos Electric shall sell its generation or other assets, obtain financing, or take such other steps as are necessary to make the Distributions. The Chapter 7 Trustee and the Collateral Trustee shall be entitled to reasonable information and updates regarding such efforts and distributions, subject to the execution of a customary non-disclosure agreement acceptable to the Parties. Brazos Electric shall also provide the Chapter 7 Trustee, the Collateral Trustee, and their respective advisors and counsel, periodic reports by teleconference or televideo with Brazos Electric's advisors and counsel and an opportunity to ask questions

8

     and receive answers in respect of Brazos Electric's progress regarding such efforts and distributions, including, without limitation, the Chapter 11 Case and any Chapter 11 Plan.

(3) To the extent the terms of any Chapter 11 Plan concerning the treatment of or recovery to or for GUCs are improved or otherwise increased as compared to Section 3(a)–(b) above (for example, without limitation, distributions in excess of the Minimum Distribution Amount on the BSCEC Allowed Claim, faster payment or other assurances of payment, or enhanced information or reporting rights), this Agreement shall be deemed amended to provide for and any such Chapter 11 Plan shall likewise provide for such improved or increased treatment or recovery for the Holder with respect to the BSCEC Allowed Claim (but under any circumstances the Minimum Distribution Amount shall be payable to the Holder in cash).

(4) Without affecting the timing of any payment obligation hereunder or the ability to enforce such payment obligation or the timing thereof, if the Distributions have not been paid in full pursuant to Section 3(a) on or before the date that is one year from the Effective Date, the Collateral Trustee shall have the option to require Brazos Electric to make payment on fifteen (15) days' written notice to Brazos Electric (the "Option"). The Option may be exercised within three (3) business days of the date that is one (1) year after the Effective Date and the exercise of the Option by the Collateral Trustee shall be binding upon the Holder. Upon the exercise of the Option by the Collateral Trustee, Brazos Electric shall make payment within fifteen (15) days of such written notice. If Brazos Electric timely pays any unpaid amounts such that total Distributions paid equal the Minimum Distribution Amount within fifteen (15) days of such written notice, total cash distributions on the BSCEC Allowed Claim shall equal the Minimum Distribution Amount, *i.e.*, one-hundred forty-three million five-hundred fifty thousand dollars ($143,550,000), and such final distribution will be paid in cash in full and final satisfaction of the BSCEC Allowed Claim. If such payment is not timely made on or before the date that is fifteen (15) days from such notice, the Holder shall be entitled to immediate payment in cash of any unpaid amounts of the Distributions at any improved or increased treatment or recovery to or for GUCs under any Chapter 11 Plan (whether or not then distributable to GUCs under such Chapter 11 Plan), but in any case not less than the Minimum Distribution Amount. (For example, without limitation, if full cash payment is not received within fifteen (15) days of the written notice and the highest total recovery for GUCs under the Chapter 11 Plan is 90%, Brazos Electric shall immediately pay the Holder in cash the amount sufficient for all cash

9

        distributions on the BSCEC Allowed Claim under the Chapter 11 Plan to total 90% of the BSCEC Allowed Claim, *i.e.*, one hundred forty eight million five hundred thousand dollars ($148,500,000).) For the avoidance of doubt, if the Collateral Trustee exercises the Option, the Holder shall not be entitled to any further distributions once fully paid pursuant to this Section 3(d).

   c.   Notwithstanding anything to the contrary herein, the BSCEC Allowed Claim amount shall be subject to a downward adjustment if the Net Sales Proceeds (as defined below) from a sale in the Chapter 7 Case under section 363 of the Bankruptcy Code of the BSCEC Estate's interest in the assets related to the Sandy Creek Energy Station (collectively, a "<u>Sale</u>") exceed the amount of one-hundred fifty million dollars ($150,000,000) (the "<u>Sale Floor</u>"). Such downward adjustment shall be equal to 114.94% of the amount by which the Net Sale Proceeds exceed the Sale Floor. (For example, without limitation, if the Net Sales Proceeds are one-hundred fifty-five million dollars ($155,000,000), the BSCEC Allowed Claim amount shall be reduced from one-hundred sixty-five million dollars ($165,000,000) to one-hundred fifty-nine million two-hundred fifty-three thousand dollars ($159,253,000).) Under no circumstance, however, can the adjustment in this Section 4 cause any amount to be owed or payable to Brazos Electric or the amount of the BSCEC Allowed Claim to decrease below $0.00. The Holder shall provide Brazos Electric, and its respective advisors and counsel, periodic reports by teleconference or televideo with the Holder's advisors and counsel and an opportunity to ask questions and receive answers regarding the status of the sale process to the extent the provision of such reports or answers would not chill bidding or otherwise adversely impact the sale process. Brazos Electric, and its advisors and counsel, shall be bound by the mediation confidentiality agreement in respect of such reports or answers. Any such downward adjustment occurring after the Effective Date, regardless of the timing of the Effective Date Distribution, shall be applied first to reduce the Post-Effective Date Distribution(s) payable by Brazos Electric under Section 3 above. For purposes of this Section 4, "<u>Net Sale Proceeds</u>" means the proceeds of a Sale paid to the Chapter 7 Trustee on behalf of the BSCEC Estate (regardless of whether those proceeds are redirected to pay BSCEC Estate creditors directly) net of (i) the following specifically associated with such Sale: professional fees, expenses, taxes, recording charges, and other like customary closing costs; and (ii) the Chapter 7 Trustee's commission for distribution of Sale proceeds from the BSCEC Estate.

   d.   Subject to the rights and obligations arising under this Agreement and subject to the approval of this Agreement by a final order of the Bankruptcy Court, and effective as of the Effective Date and the receipt of any Effective Date Distribution due, Brazos Electric irrevocably releases (i) BSCEC, the BSCEC Estate, the Chapter 7 Trustee, their current or former officers, directors, agents, professionals, attorneys, and employees, and each of their

predecessors in interest, successors, and assigns, as to each of the foregoing solely in such capacities, of and from any and all obligations, causes of action, claims, liabilities, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, from the beginning of time to the Agreement Date, arising out of, by reason of, or related to Brazos Electric, BSCEC, the BSCEC Estate, the Chapter 7 Trustee, the Collateral Trustee, the Noteholders, the BSCEC PPA, the Consent and Agreement, the Collateral Indenture, the NPA, and the Notes; (ii) the Collateral Trustee, its predecessors, successors, assigns, and co-trustees, and their current or former officers, directors, agents, members, managers, professionals, attorneys, and employees, as to each of the foregoing solely in such capacities, of and from any and all obligations, causes of action, claims, liabilities, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, from the beginning of time to the Agreement Date, arising out of, by reason of, or related to Brazos Electric, BSCEC, the BSCEC Estate, the Chapter 7 Trustee, the Collateral Trustee, the Noteholders, the BSCEC PPA, the Consent and Agreement, the Collateral Indenture, the NPA and the Notes; and (iii) the current or prior holders of (or managers or investment managers of current or prior holders of) the Notes and each of their respective agents, members, managers, officers, directors, professionals, attorneys, and employees, and each of their predecessors in interest, successors, and assigns (the "<u>Noteholders</u>"), as to each of the foregoing solely in such capacities, of and from any and all obligations, causes of action, claims, liabilities, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, from the beginning of time to the Agreement Date, arising out of, by reason of, or related to Brazos Electric, BSCEC, the BSCEC Estate, the Chapter 7 Trustee, the Collateral Trustee, the Noteholders, the BSCEC PPA, the Consent and Agreement, the Collateral Indenture, the NPA, and the Notes.

e. Subject to the rights and obligations arising under this Agreement and subject to the approval of this Agreement by a final order of the Bankruptcy Court, and effective as of the Effective Date and the receipt of any Effective Date Distribution due, the Chapter 7 Trustee, on behalf of the BSCEC Estate and any party claiming by or through it, irrevocably releases Brazos Electric, its current or former officers, directors (as well as the current or former officers and directors, agents, attorneys or professionals of BSCEC not (a) currently retained or employed by the Chapter 7 Trustee and not (b) currently or formerly providing goods or services for the operation or maintenance of the Sandy Creek Energy Station), agents, members, managers, professionals, attorneys, and employees, and each of their predecessors in interest, successors, and assigns, as to each of the foregoing solely in such capacities (collectively, the "<u>Brazos Electric/BSCEC Released Parties</u>"), of and from any and all obligations, causes of action, claims, liabilities, and demands of any kind whatsoever, at law or in equity,

11

    direct or indirect, known or unknown, discovered or undiscovered, from the beginning of time to the Agreement Date, arising out of, by reason of, or related to Brazos Electric, BSCEC, the BSCEC Estate, the Chapter 7 Trustee, the Collateral Trustee, the Noteholders, the BSCEC PPA, the Consent and Agreement, the Collateral Indenture, the NPA, and the Notes; *provided, however*, for the avoidance of doubt, this Section 6 shall effect a release only with respect to the Brazos Electric/BSCEC Released Parties and shall not affect or impair any obligations, causes of action, claims, liabilities, or demands, whether pursuant to this Agreement or otherwise, arising or otherwise existing solely between or among the Chapter 7 Trustee, BSCEC, the BSCEC Estate, the Collateral Trustee, or the Noteholders (none of whom are released parties under this Section 6).

  f. Subject to the rights and obligations arising under this Agreement and subject to the approval of this Agreement by a final order of the Bankruptcy Court, and effective as of the Effective Date and the receipt of any Effective Date Distribution due, the Collateral Trustee, on behalf of itself and the Noteholders irrevocably releases the Brazos Electric/BSCEC Released Parties of and from any and all obligations, causes of action, claims, liabilities, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, from the beginning of time to the Agreement Date, arising out of, by reason of, or related to Brazos Electric, BSCEC, the BSCEC Estate, the Chapter 7 Trustee, the Collateral Trustee, the Noteholders, the BSCEC PPA, the Consent and Agreement, the Collateral Indenture, the NPA, and the Notes; *provided, however*, for the avoidance of doubt, this Section 7 shall effect a release only with respect to the Brazos Electric/BSCEC Released Parties and shall not affect or impair any obligations, causes of action, claims, liabilities, or demands, whether pursuant to this Agreement or otherwise, arising or otherwise existing solely between or among the Chapter 7 Trustee, BSCEC, the BSCEC Estate, the Collateral Trustee, or the Noteholders (none of whom are released parties under this Section 7).

## **RELIEF REQUESTED**

22. By this Joint Motion, the Movants request that this Court enter in each of the Cases the Proposed Order authorizing and approving the Settlement, as set forth in the Agreement, by and between (i) Brazos Electric, on the one hand, and, on the other hand, (ii)(a) the Chapter 7 Trustee and (b) the Collateral Trustee.

**BASIS FOR RELIEF**

23. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). In addition, section 105(a) of the Bankruptcy Code authorizes the Court to issue any order "that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

24. In deciding whether to approve a compromise under Bankruptcy Rule 9019, the court must determine if the settlement is "fair and equitable and in the best interest of the estate." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts should analyze proposed settlements. *In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). The three factors are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *See id.* (internal citations omitted). The "other factors" include: "(i) the best interests of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* The role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead,

the "court should approve a settlement under Rule 9019 if the settlement is within a range of reasonableness, fair and equitable, and in the best interest of the bankruptcy estate." *In re TECNET, Inc.*, No. 04-34162, 2006 Bankr. LEXIS 4572, at *2–3 (Bankr. N.D. Tex. June 2, 2006).

25. Here, the Settlement and entry into the Agreement by Brazos Electric and the Chapter 7 Trustee in the Chapter 11 Case and the Chapter 7 Case, respectively, meet the standard for approval of a settlement pursuant to Bankruptcy Rule 9019. The Claims Objections involve issues of law and fact with uncertain probability of success for both (a) Brazos Electric and (b) the Chapter 7 Trustee and the Collateral Trustee. As is more fully set forth in the Summary Judgment Motions and the Summary Judgment Responses, the Contested Matters raised novel issues of contract interpretation and mitigation obligations, among others. Protracted litigation regarding the ultimate resolution of the Claims will be time-consuming and expensive due to the extremely complex nature of the issues raised thereby. Moreover, such litigation will cause material delay in both Cases. Resolution via the Settlement avoids the risk of an appeal of material issues raised in the Contested Matter and the potential of such an appeal to delay or hinder the plan process in the Chapter 11 Case. The Settlement will obviate the need for expensive and time-consuming litigation regarding allowance of the Claims, including, without limitation, anticipated appeals of rulings by this Court in the Contested Matter.

26. The Settlement is the result of extensive arms' length negotiations and is based on a proposal originally formulated by the mediator in the course of the Mediation. As such, the Movants submit that the Settlement Agreement is in the best interest of, and maximizes value for, both the BSCEC Estate in the Chapter 7 Case as well as Brazos Electric's estate in the Chapter 11 Case.

4867-7011-8702

## NOTICE

27. Notice of this Joint Motion has been provided as follows in accordance with the requirements of Bankruptcy Rule 2002(a). With respect to the Chapter 11 Case, Brazos Electric has caused notice of this Joint Motion to be given by first-class mail or email or facsimile to the parties on the Master Service List in the Chapter 11 Case as well as the Parties and counsel thereto. With respect to the Chapter 7 Case, the Chapter 7 Trustee has caused notice of this Joint Motion to be given by first-class mail, email, facsimile, or ECF to the U.S. Trustee and the Parties and counsel thereto. The Movants submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28. No prior request for the relief sought herein has been made by the Movants to this Court or to any other court.

## BASIS FOR EXPEDITED RELIEF

29. The Parties request expedited consideration of the Motion due to the impending filing of Brazos Electric's proposed plan of reorganization in the Chapter 11 Case, which will incorporate the terms of the Agreement to address the treatment of the Claims in such plan.

[*Remainder of this page intentionally left blank.*]

WHEREFORE, the Movants respectfully request that the Court enter in each of the Cases the Proposed Order authorizing and approving the Settlement, as set forth in the Agreement, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, and grant such other or further relief to which the Movants are justly entitled.

Dated: August 24, 2022

Respectfully submitted,

| **FOLEY & LARDNER LLP** | **HUGHES WATTERS ASKANASE, LLP** |
|---|---|
| */s/ Holland N. O'Neil* <br> Holland N. O'Neil <br> State Bar No. 14864700 <br> Telephone: 214-999-4961 <br> Email: honeil@foley.com <br> 2021 McKinney Avenue, Suite 1600 <br> Dallas, Texas 75201 <br><br> -and- <br><br> Michael K. Riordan <br> State Bar No. 24070502 <br> 1000 Louisiana, Suite 2000 <br> Houston, Texas 77002-5011 <br> Telephone: 713-276-5178 <br> Email: mriordan@foley.com <br><br> -and- <br><br> Timothy C. Mohan *(admitted pro hac vice)* <br> State Bar No. 50559 <br> Email: tmohan@foley.com <br> Telephone: 720.437.2000 <br> 1400 16th Street, Suite 200 <br> Denver, Colorado 80202 <br><br> **SPECIAL COUNSEL AND CONFLICTS COUNSEL TO BRAZOS ELECTRIC** | */s/ Heather Heath McIntyre* <br> Wayne Kitchens <br> State Bar No. 11541110 <br> Heather Heath McIntyre <br> State Bar No. 24041076 <br> TotalEnergies Tower <br> 1201 Louisiana St., 28th Floor <br> Houston, Texas 77002 <br> Telephone: (713) 759-0818 <br> Email: wkitchens@hwa.com <br>         hmcintyre@hwa.com <br><br> **COUNSEL FOR THE CHAPTER 7 TRUSTEE** |

16

4867-7011-8702

**CERTIFICATE OF ACCURACY (CHAPTER 7 CASE)**

The undersigned hereby certifies that the facts and circumstances described in the above pleading giving rise to the expedited request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ Heather Heath McIntyre*
Heather Heath McIntyre

**CERTIFICATE OF SERVICE (CHAPTER 7 CASE)**

The undersigned hereby certifies that true and correct copies of the foregoing and all materials filed contemporaneously therewith, including any exhibits or other attachments thereto, were served via ECF on all parties receiving ECF notifications in the Chapter 7 Case (as defined in the Motion) on August 22, 2022.

*/s/ Heather Heath McIntyre*
Heather Heath McIntyre

**CERTIFICATE OF ACCURACY (CHAPTER 11 CASE)**

The undersigned hereby certifies that the facts and circumstances described in the above pleading giving rise to the expedited request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ Holland N. O'Neil*
Holland N. O'Neil

**CERTIFICATE OF SERVICE IN CHAPTER 11 CASE**

The undersigned hereby certifies that true and correct copies of the foregoing and all materials filed contemporaneously therewith, including any exhibits or other attachments thereto, were served via ECF on all parties receiving ECF notifications in the Chapter 11 Case (as defined in the Motion) on August 22, 2022.

*/s/ Michael K. Riordan*
Michael K. Riordan